J-S18030-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN RE: Z.S.F.-M., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: C.W., FATHER | No. 2942 EDA 2014 |

Appeal from the Order entered September 9, 2014,
in the Court of Common Pleas of Philadelphia County,
Family Court, at No(s): CP-51-AP-0000629-2012,
CP-51-DP-0062820-2010, FID: 51-FN-471204-2009

BEFORE:  BENDER, P.J.E., ALLEN, and MUNDY, JJ.

MEMORANDUM BY ALLEN, J.:                    **FILED APRIL 02, 2015**

Appellant, C.W. ("Father"), appeals from the order involuntarily terminating his parental rights to Z.S.F.-M. ("Child") (born in May of 2008) pursuant to 23 Pa.C.S. § 2511(a)(1), (2), (5), (8), and (b), and changing Child's permanency goal to adoption pursuant to section 6351 of the Juvenile Act, 42 Pa.C.S.A. § 6351.[1]  We affirm.

On June 4, 2009, the parties first became known to the Department of Human Services ("DHS"), as a result of a General Protective Services ("GPS") report alleging that Child was dirty and unkempt with an odor.  The report alleged that Child cried constantly and appeared to be disheveled. The report further alleged that the family home where Child resided was filthy, dirty, and infested with roaches, and that the home was structurally

---

[1] The parental rights of Child's minor mother, T.F. ("Mother"), were terminated on September 9, 2014.  Mother is not a party to the current appeal, nor did she file a separate appeal.

unstable and appeared ready to collapse. A subsequent report alleged that the residents of the home were engaged in drug activities.

On January 14, 2010, an adjudicatory hearing was held for Child's minor Mother. The trial court adjudicated Mother, Child, and Child's siblings dependent, and committed them to the care of DHS. The trial court ordered DHS to locate a mother/child placement for Mother and Child, and ordered DHS to refer Mother to the Adolescent Initiative Center ("AIC"). Father's identity and whereabouts were unknown to DHS.

On June 7, 2010, DHS placed Child in care with a maternal aunt through Children's Choice, Inc. ("Children's Choice"). At a shelter care hearing on June 8, 2010, the trial court specifically ordered Child to be temporarily committed to DHS. On June 16, 2010, following an adjudicatory hearing, the trial court ordered Mother to have weekly supervised visits, and ordered Father, once he made himself known to DHS, to have weekly supervised visits.

On October 6, 2010, Father appeared for a permanency review. The trial court ordered Child to remain committed to DHS. On December 9, 2010, DHS held a Family Service Plan ("FSP") meeting, which Mother and Father did not attend. At a subsequent permanency review hearing on May 9, 2011, the trial court ordered Child to remain committed to DHS. At the time of that hearing, Father's whereabouts were unknown. On November 28, 2011, another permanency review hearing was held, and Father was not

present. The trial court ordered DHS to implement the recommendations from Mother's Parenting Capacity Evaluation and to review the evaluation with Mother.

On January 26, 2012, following a permanency review hearing, the trial court ordered Child to remain committed to DHS, and directed DHS to conduct a Parent Locator Search for Father. The trial court ordered that Child be placed in a new, pre-adoptive home. On January 30, 2012, DHS held an FSP meeting. The trial court directed that Father: (1) make himself known to DHS; (2) complete a parenting class for teen parents; (3) attend family therapy with Child if appropriate; (4) visit biweekly with Child; (5) obtain suitable housing with operable utilities; and (6) obtain and maintain employment.

On November 16, 2012, DHS filed a petition to involuntarily terminate Father's parental rights to Child. On September 9, 2014, the trial court held a hearing on the petition. At the hearing, Jennifer Kreplesky, a DHS social worker; Shannon O'Malley, a Children's Choice Supervisor; and Shavon Joseph, a Children's Choice caseworker, all testified. On September 9, 2014, the trial court entered its decree terminating Father's parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(1), (2), (5), (8) and (b), and changing Child's permanency goal.

Father timely filed a notice of appeal, along with a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b). Father presents the following issue for our review:

> 1. Whether the trial court committed reversible error when it involuntarily terminated [F]ather's parental rights where such determination was not supported by clear and convincing evidence under the Adoption Act 23 Pa.C.S.A. § 2511(a)(1), (a)(2), (a)(5), and (a)(8) when [Father] contends [F]ather made progress towards working and meeting the FSP goals [?]

Father's Brief at 2.[2]

Our standard of review regarding orders terminating parental rights is as follows:

> When reviewing an appeal from a decree terminating parental rights, we are limited to determining whether the decision of the trial court is supported by competent evidence. Absent an abuse of discretion, an error of law, or insufficient evidentiary support for the trial court's decision, the decree must stand. Where a trial court has granted a petition to involuntarily terminate parental rights, this Court must accord the hearing judge's decision the same deference that we would give to a jury verdict. We must employ a broad, comprehensive review of the record in order to determine whether the trial court's decision is supported by competent evidence.

*In re S.H.*, 879 A.2d 802, 805 (Pa. Super. 2005). In termination cases, the burden is upon the petitioner to prove by clear and convincing evidence that

---

[2] Father does not challenge § 2511(b) in his Statement of Questions Presented. Father appears to have copied and pasted his second Statement of Question Involved from the first one. However, Father does challenge 2511(b) in the argument section of his brief. *See* Father's Brief 10-13.

the asserted grounds for seeking the termination of parental rights are valid. *Id.* at 806. We have stated:

> The standard of clear and convincing evidence is defined as testimony that is so "clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue.

*In re J.L.C. & J.R.C.*, 837 A.2d 1247, 1251 (Pa. Super. 2003).

The trial court is free to believe all, part, or none of the evidence presented, and is likewise free to make all credibility determinations and resolve conflicts in the evidence. *In re M.G.*, 855 A.2d 68, 73-74 (Pa. Super. 2004). If competent evidence supports the trial court's findings, we will affirm, even if the record could also support the opposite result. *In re Adoption of T.B.B.,* 835 A.2d 387, 394 (Pa. Super. 2003). Additionally, this Court "need only agree with [the trial court's] decision as to any one subsection in order to affirm the termination of parental rights." *In re B.L.W.*, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*), *appeal denied*, 581 Pa. 668, 863 A.2d 1141 (2004).

In terminating Father's parental rights, the trial court relied upon Section 2511(a)(1) and (b) which provide:

§ 2511. Grounds for involuntary termination

**(a) General rule.**--The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

(1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

*  *  *

**(b) Other considerations**.--The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child.  The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent.  With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511.

We have explained this Court's review of a challenge to the sufficiency of the evidence to support the involuntary termination of a parent's rights pursuant to section 2511(a)(1) as follows:

To satisfy the requirements of section 2511(a)(1), the moving party must produce clear and convincing evidence of conduct, sustained for at least the six months prior to the filing of the termination petition, which reveals a settled intent to relinquish parental claim to a child or a refusal or failure to perform parental duties.  In addition,

Section 2511 does not require that the parent demonstrate both a settled purpose of relinquishing parental claim to a child and refusal or failure to perform parental duties.  Accordingly, parental rights may be terminated pursuant to [s]ection 2511(a)(1) if the parent either demonstrates a settled purpose of relinquishing parental claim to a child or fails to perform parental duties.

Once the evidence establishes a failure to perform parental duties or a settled purpose of relinquishing parental rights, the court must engage in three lines of inquiry: (1) the parent's explanation for his or her conduct; (2) the post-abandonment contact between parent and child; and (3) consideration of the effect of termination of parental rights on the child pursuant to [s]ection 2511(b).

*In re Z.S.W.*, 946 A.2d 726, 730 (Pa. Super. 2008) (internal citations omitted).

Regarding the definition of "parental duties," this Court has stated:

There is no simple or easy definition of parental duties. Parental duty is best understood in relation to the needs of a child. A child needs love, protection, guidance, and support. These needs, physical and emotional, cannot be met by a merely passive interest in the development of the child. Thus, this Court has held that the parental obligation is a positive duty which requires affirmative performance.

This affirmative duty encompasses more than a financial obligation; it requires continuing interest in the child and a genuine effort to maintain communication and association with the child.

Because a child needs more than a benefactor, parental duty requires that a parent exert himself to take and maintain a place of importance in the child's life.

Parental duty requires that the parent act affirmatively with good faith interest and effort, and not yield to every problem, in order to maintain the parent-child relationship to the best of his or her ability, even in difficult circumstances. A parent must utilize all available resources to preserve the parental relationship, and must exercise reasonable firmness in resisting obstacles placed in the path of maintaining the parent-child relationship. Parental rights are not preserved by waiting for a more suitable or convenient time to perform one's parental responsibilities while others provide the child with . . . her physical and emotional needs.

- 7 -

***In re B., N.M.***, 856 A.2d 847, 855 (Pa. Super. 2004), *appeal denied*, 582 Pa. 718, 872 A.2d 1200 (2005) (internal citations omitted).

The trial court found "it is clear from the record that for a period of six months leading up the filing of the Petition for Involuntary Termination, [F]ather failed to perform any parental duties for the [C]hild."  Trial Court Opinion, 11/12/14, at 4 (unpaginated).  The trial court also found that "[Child] has been in care for over thirty-seven months."  ***Id.*** at 5.  The trial court's findings are supported by the hearing testimony.  Ms. Kreplesky testified that Father was not compliant with any of his FSP objectives.  N.T., 9/9/14, at 46.  Ms. Kreplesky testified that Father did not complete his parenting classes.  She stated that Father "attended three sessions, then Father was released for about three weeks, then he was re-incarcerated and he never reengaged with parent [classes]."  ***Id.***  Ms. O'Malley testified that outreach letters were sent to Father while he was incarcerated and when he was released from incarceration.  ***Id.*** at 67.  Ms. O'Malley testified that Father did not respond to any of the outreach.  ***Id.***

We defer to a trial court's determination of credibility, absent an abuse of discretion, and discern no such abuse in the trial court crediting the testimony of Ms. Kreplesky and Ms. O'Malley.  ***In re M.G.***, 855 A.2d 68, 73-74.  Our review of the record supports the trial court's determination that Father has failed or refused to perform parental duties as delineated in 23 Pa.C.S. § 2511(a)(1).  Accordingly, Father's claim regarding clear and

convincing evidence pursuant to 23 Pa.C.S. § 2511(a) is without merit. *See id*.

Next, although Father did not raise Section 2511(b) in his Statement of Questions Presented, we review the termination of Father's parental rights relative to the needs and welfare of Child pursuant to 23 Pa.C.S.A. § 2511(b). ***See In re C.L.G.***, 956 A.2d 999, 1009 (Pa.Super. 2008) (*en banc*). Pursuant to section 2511(b), the trial court's inquiry is specifically directed to a consideration of whether termination of parental rights would best serve the developmental, physical and emotional needs of the child. ***See In re C.M.S.***, 884 A.2d 1284, 1286-87 (Pa. Super. 2005), *appeal denied*, 587 Pa. 705, 897 A.2d 1183 (2006). "Intangibles such as love, comfort, security, and stability are involved in the inquiry into the needs and welfare of the child." ***Id.*** at 1287 (citation omitted). We have instructed that the court must also discern the nature and status of the parent-child bond, with utmost attention to the effect on the child of permanently severing that bond. ***See id***.

The trial court concluded that Child would not suffer any irreparable emotional harm if Father's parental rights were terminated. Trial Court Opinion, 11/12/14, at 6 (unpaginated) (citations omitted). The trial court found that "[Child] has had no contact with [F]ather since April 2012," and that "[Child] did not have an opportunity to bond with [F]ather due to [F]ather's repeated incarcerations and long periods of his whereabouts being unknown." ***Id.*** Ms. Kreplesky and Ms. O'Malley testified that there is no parent-child bond between Child and Father, and that termination is in

Child's best interests. N.T., 9/9/14, at 52, 68. Ms. Kreplesky testified that Father has only seen his son twice, and the second time he saw his son, Father did not know who Child was. *Id.* at 53. Ms. Kreplesky also testified that terminating Father's parental rights would not cause any permanent emotional harm to Child, and that terminating Father's parental rights to Child is in the best interest of Child. *Id.* at 53. Moreover, Ms. O'Malley stated that, when Father first met Child, Child did not go toward Father, and Child did not have an interest in even talking to Father. *Id.* at 68.

Furthermore, the trial court found that Child has bonded with his foster parents, and that "[Child] had a positive relationship with his foster parents and expressed feelings of stability and consistency." Trial Court Opinion, 11/12/14, at 6. Ms. Kreplesky and Ms. Joseph testified that Child has been in foster care for two and a half years, and has bonded with both his foster parents and siblings. N.T., 9/9/14, 14-17; 29. Ms. Kreplesky stated that Child refers to foster parents as "mom" and "dad," and that foster parents love Child. *Id.* at 17. Ms. Joseph testified that Child is "very, very happy to be [with foster parents]." *Id.* at 29.

Father testified that he received the outreach letters, and wanted to have contact with Child, but did not follow through with DHS. *Id.* at 71. Father also testified that he is willing to try to be in Child's life. *Id.* at 76.

In sum, the trial court credited the testimony presented by DHS in support of termination. We defer to a trial court's determination of credibility, absent an abuse of discretion, and discern no such abuse in this

case. *See In re M.G.*, 855 A.2d 68, 73-74. To the extent evidence of a bond between Child and Father is before this Court, the trial court did not abuse its discretion in concluding that there was no bond between Child and Father. *See in re K.Z.S.*, 946 A.2d 753, 763 (Pa. Super. 2008). The trial court gave adequate consideration of the developmental, physical, and emotional needs of Child in determining that Father's parental rights should be terminated pursuant to section 2511(b), and the record supports the trial court's best interest analysis. *In re C.M.S. supra*.

Upon review, we affirm the order terminating Father's parental rights on the basis of section 2511(a)(1) and (b), and changing the permanency goal for Child to adoption.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/2/2015